## 27658. NEWCOMB *v.* NISKEY'S LAKE INCORPORATED *et al.*

DECIDED DECEMBER 4, 1940.

*H. C. Holbrook,* for plaintiff.
*Jones, Powers & Williams,* for defendants.

MACINTYRE, J. At and before April 1, 1924, Niskey's Lake Incorporated, the principal defendant, owned and desired to develop for residential purposes a tract of land in Fulton County. To evidence and to secure the funds which it then and had theretofore borrowed from the Adair Realty & Trust Company for the purposes, aggregating $72,000, it executed and delivered to the trust company $80,000 principal amount of bonds, payable to bearer, and secured the same by a deed of trust to the trust company, as trustee, covering said lands and the improvements thereon. The difference of $8000 between the $72,000 loan and the principal amount of the bonds was charged by the trust company and entered on its books as commissions for making the loan. There was no underwriting or agency agreement. The money was loaned by the trust company from its own funds, and the bonds and trust deed were executed and delivered to it. The two individual defendants, stockholders in Niskey's Lake Inc., executed on each bond the following: "For value received, we hereby guarantee the payment of the within bond, principal and interest, according to the tenor and effect thereof." These bonds were subsequently sold by the trust company for its own account to various customers, the bond involved in this case having been sold to the plaintiff over a year later in June, 1925. The bonds provided for interest from their date until paid at eight per cent. per annum, and also contained the following

provision: "The company agrees to pay the principal hereof and the interest hereon without deduction therefrom for any normal Federal income taxes which the company, or the trustee, or the holder, may be required to pay thereon, or authorized to retain therefrom, under any present or future law of the United States. But the aggregate amount which the company may be called upon to pay by reason of this agreement shall not exceed four per cent. of the annual interest thereon in any one year." The bonds also contained the further provision: "Said bonds are made subject to redemption, in whole or in part, on any interest-payment date, as provided in said deed of trust, at par and accrued interest and income tax charges, if any."

In 1927 the trust company went into bankruptcy. On April 1, 1929, the bonds matured, and were exchanged by the holders for new bonds, maturing five years from date, secured by a deed of trust conveying the same property and naming Atlanta Trust Company as trustee. No new consideration was given for the renewal bonds. They were in all respects merely renewals of the old bonds, and the bonds and deed of trust were substantially similar in all respects to the old bonds and deed of trust, and bore the guarantee of the individual defendants in identical terms with the old bonds. Plaintiff was one of those exchanging his old bond for a renewal bond, and the bond sued on is the renewal bond so taken by plaintiff in exchange for the original bond purchased by him in June, 1925. The depression caught the development, and Frank Adair, one of the individual defendants, went into bankruptcy, leaving the other individual defendant, Robert P. Jones, with the entire load. According to his testimony he furnished from his own funds over $80,000 to pay the interest "to keep up the property, and had tried to sell it for the bondholders and had strained every financial reserve that he had." The renewal bonds matured during the depression, the property was not salable, the defendant corporation was insolvent, and in that juncture the remaining individual obligor, explaining his financial situation, sought to adjust the obligation on the bonds to an amount that he was able to pay. Most of the bondholders accepted, the plaintiff being one of the three or four who refused to do so. It would have been unfair to the others and contrary to the spirit and intent of the agreement to pay some of the bondholders more than others, and hence the de-

fendants were driven to urging their defense. The defendants set up that the bond sued on was infected with usury, both because a commission of ten per cent. was charged by the lender making the loan, in addition to the highest legal rate, and, further, because the bonds themselves required the principal debtor to pay, in addition to highest legal rate of interest, the normal Federal income taxes imposed on the holders of the bonds on account of the interest received by them on the bonds. They contended that the entire interest was therefore forfeited, and that all sums that had been paid as interest should be credited on the principal amount. They further set up and proved that there had been tendered to the plaintiff, after credit for the interest paid and after credit for the amount received by them from the foreclosure of the property, the balance due prior to the bringing of the suit.

The trial court without a jury found that the transaction was usurious, and that the defendants were entitled to set off the claim, and rendered judgment for the plaintiff in the amount admitted to be due, and which had been tendered into court. The plaintiff's motion for new trial was overruled, and he excepted.

If there was usury in the original loan it was not purged out of the contract when the new bonds were given, and if the usury was in them they are contaminated just as the original contract was, and all payments made in the interval are to be treated, not as payments of usury, but as payments made on the original debt principal. *McGee* v. *Long,* 83 *Ga.* 156 (9 S. E. 1107). The evidence authorized the judge to find that the transaction was in effect a loan of $80,000 in money by Adair Realty & Trust Company to Niskey's Lake Inc., and that the lender charged the borrower more than the maximum rate of interest provided by statute; that is to say, it required a payment of $8000, or ten per cent. of the principal amount of the bonds, as a commission and a percentage of Federal income taxes that might be imposed upon the bonds in addition to exacting eight per cent. per annum interest from date on the entire principal amount of the bonds. "Usury is the reserving and taking, or contracting to reserve and take, either directly or by indirection, a greater sum for the use of money than the lawful interest." Code, § 57-102. "The plea of usury is personal; but a creditor may not collect usurious interest from an insolvent debtor to the prejudice of other creditors." § 57-103. "Any person,

814

company, or corporation violating the provisions of section 57-101 [which fixes the highest legal rate of interest in certain contracts of which the instant contract is one, at eight per cent. per annum], shall forfeit the entire interest so charged or taken, or contracted to be reserved, charged or taken. No further penalty or forfeiture shall be occasioned, suffered or allowed." § 57-112.

It was contended by the plaintiff that under the negotiable-instruments law usury can not be pleaded against a holder in due course, and that he is a holder in due course and takes the instrument free from such defense. The contention is that by the passage of the negotiable-instruments law and particularly that provision now appearing in the Code, § 14-507, the law as to usury has been modified, so that a purchaser in due course and without notice now takes a usurious contract free from any taint of usury. Code § 14-507 provides: "A holder in due course holds the instrument free from any defect of title to prior parties, and free from defenses available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." On the other hand, the defendant in error argues that to so hold is to say that the section of the negotiable-instruments law just quoted (Code, § 14-507) repealed § 57-101, which fixes the legal rate of interest in certain contracts (of which the present contract is one) at eight per cent. per annum, and also repealed § 57-112, which provides that the *entire* interest shall be forfeited where the contract is usurious. The Supreme Court in *Newcomb* v. *Niskey's Lake Inc.,* supra, in answer to the questions certified to it by this court, held, among other things, that Code, § 14-507, does not purport to either deny a defense going to the disallowance of excessive interest, or to the affirmative matter of forfeiture of earned interest allowed by statute. Nor does it repeal Code, § 4286, Code of 1910, on the ground of repugnancy or "reflect legislative intent to repeal the old law as embodied in the Code of 1910, § 4286, or the act of 1916, with such degree of certainty as would bring about repeal by implication. The act of 1916 (Code of 1933, § 57-112) must be considered in connection with the related unrepealed § 4286 of the Code of 1910. The one *expressly* allows defenses based on immoral and illegal consideration against an innocent holder for value, and the other provides for forfeiture of interest as against such holder

based on usury, which, according to the decisions of this court hereinabove cited, is illegal and immoral per se. When so considered, and giving effect to them since passage of the negotiable-instruments law of 1924 in this State, the exaction of usury in a negotiable instrument will cause a forfeiture of the entire interest contracted to be taken, as against a holder in due course as defined in the negotiable-instruments act as set forth in the Code, §§ 14-502, 14-507." The court further held that usury, being of an odious, illegal, and immoral .character, "though not expressly mentioned by that name, comes within the second exception provided in the Code of 1910, § 4286 (omitted from the Code of 1933), which declares: 'The bona fide holder for value of a bill, draft, or promissory note, or other negotiable instrument, who receives the same before it is due, and without notice of any defect or defense, shall be protected from any defenses set up by the maker, acceptor, or indorser, except the following: 1. Non est factum. 2. Gambling, or *immoral and illegal consideration*. 3. Fraud in its procurement.'" (Italics ours.)

Therefore, under what has been here said and quoted, and under the other rulings announced in the decision of the Supreme Court in the *Newcomb* case, supra, the judge did not commit reversible error in finding a judgment in effect that the contract was usurious, and that all payments made by the debtor were to be credited upon the principal sum loaned, and in giving judgment for the balance of the principal after deducting *all* payments of interest, whether usurious or legal, from the original principal amount loaned.

*Judgment affirmed.* *Broyles, C. J., and Gardner, J., concur.*